UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO ROSAS-RAMIREZ,<br><br>Defendant. | Case No. 18-CR-00053-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT**<br><br>Re: Dkt. No. 29 |

Before the Court is Defendant Antonio Rosas-Ramirez's ("Defendant") motion to dismiss the indictment for illegal reentry following deportation in violation of 8 U.S.C. § 1326 as to Defendant's 1998 administrative removal. ECF No. 29 ("Mot."). Defendant also challenges the 2002 reinstatement of the 1998 administrative removal. *Id.*

In 1996, Defendant was convicted under California Health & Safety Code § 11352 ("1996 conviction"). In 1998, Defendant was placed in administrative removal proceedings because his 1996 conviction was classified as an aggravated felony. Administrative removal proceedings, which are limited to noncitizens convicted of an aggravated felony who are not permanent residents, do not require a hearing before an Immigration Judge. 8 U.S.C. § 1228(b). In 1998, an

1

immigration officer ordered Defendant removed from the United States. In 2002, Defendant was once again ordered removed from the United States based on the reinstatement of the 1998 removal order. In 2014, Defendant was once again removed from the United States after a hearing before an Immigration Judge.

Now, Defendant asserts that he was not informed of his right to seek judicial review of the immigration officer's decision that his 1996 conviction was an aggravated felony. Defendant also argues that the 1996 conviction was not an aggravated felony. Having considered the filings of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss the 1998 administrative removal and the 2002 reinstatement of the 1998 administrative removal from the indictment. However, Defendant's 2014 removal remains a valid predicate removal that independently supports the indictment.

## I. BACKGROUND

### A. Factual Background

In 1996, Defendant was convicted of one count of a violation of Cal. Health & Safety Code § 11352. ECF No. 29-1 at Ex. F. Cal. Health & Safety Code § 11352 punishes "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance . . . . or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug." The record is unclear as to of what specific conduct prohibited by § 11352 Defendant was convicted because Defendants' criminal complaint states only that Defendant was charged with "SALE/TRANSPORTATION/OFFER TO SELL CONTROLLED SUBSTANCE." ECF No. 29-1 at Ex. E. The criminal complaint further states that Defendant "did willfully and unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, heroin." *Id.* Defendants' abstract of judgment states only "SALE

2

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002
REINSTATEMENT FROM INDICTMENT

TRANS OFR –HEROIN." *Id.* at Ex. F. Defendant was sentenced to 3 years of imprisonment. *Id.*

On June 24, 1998, an immigration officer served Defendant with a "Notice of Intent to Issue a Final Administrative Removal Order" ("Notice of Intent"). ECF No. 29-1 at Ex. A. The Notice of Intent stated that Defendant was a citizen of Mexico and entered the United States on or about January 1994 without inspection, and that Defendant was convicted in the California Superior Court for the County of Santa Cruz for violating Cal. Health & Safety Code § 11352. *Id.* The Notice of Intent also stated that Defendant was deportable without appearing before an Immigration Judge because he was convicted of an aggravated felony "as defined in section 101(a)(43) of the Act, 8 U.S.C. 1101(a)(43)." *Id.* 8 U.S.C. § 1101(a)(43)(B) states that "aggravated felony" means "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."

The Notice of Intent contained a section called "Your Rights and Responsibilities." ECF No. 29-1 at Ex. A. The section disclosed that Defendant had the right to, *inter alia*, "rebut the charges stated above (with supporting evidence)" and seek judicial review by filing a petition for review "within 14 calendar days after the date" the final administrative order of removal is issued. *Id.*

The Notice of Intent also contained 4 other sections. The first section was entitled "Certificate of Service." The Certificate of Service section stated: "I served this Notice of Intent upon the above named person." The Certificate of Service section was completed and signed by an immigration officer. The Certificate of Service section also noted that "I explained and/or served this Notice of Intent to the alien in the Spanish language." Defendant was served on June 24, 1998. *Id.*

The second section was an acknowledgement of the receipt of the Notice of Intent. The acknowledgement section stated: "I acknowledge that I have received this NOTICE OF INTENT TO ISSUE FINAL ADMINISTRATIVE REMOVAL ORDER." This second section contains Defendant's signature acknowledging receipt of the Notice of Intent, and was dated June 24, 1998

3

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

at 13:00. *Id.*

As shown below, the third section was entitled "I Wish to Contest," with 4 checkbox options for grounds on which Defendant could contest his deportability. *Id.* The 4 checkbox options stated: (1) "I am a citizen or national of the United States"; (2) "I am a lawful permanent resident of the United States"; (3) "I was not convicted for the criminal offense described in allegation number 6 above"; and (4) "I am attaching documents in support of my rebuttal and request for further review." *Id.* The "I Wish to Contest" section was not completed. *Id.*

**I WISH TO CONTEST**

I contest my deportability because: (Attach any supporting documentation):

( ) I am a citizen or national of the United States.
( ) I am a lawful permanent resident of the United States.
( ) I was not convicted for the criminal offense described in allegation number 6 above.
( ) I am attaching documents in support of my rebuttal and request for further review.

_____  _____  _____
(Signature of Respondent)      (Printed Name of Respondent)      (Date and Time)

As shown below, the fourth section was entitled "I Do Not Wish to Contest." This fourth section stated:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition of the Final Removal Order. I wish to be deported to Mexico. I also waive the 14-day period of execution of the Final Removal Order.

*Id.* Defendant signed the "I Do Not Wish to Contest" section on June 24, 1998 at 13:00, witnessed by the immigration officer who also signed on June 24, 1998, at 13:00.

**I DO NOT WISH TO CONTEST**

(X) I admit the allegations and charge in the Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. I wish to be deported to . Mexico

(X) I also waive the 14 day period of execution of the Final Removal Order

Antonio Rosas Rouviel  ANTONIO ROSAS ROUVIEL   6/24/98 1300
(Signature of Respondent)  (Printed Name of Respondent)  (Date and Time)

[Signature of Witness]  Gregory D. Floyd   6/24/98 1300
(Signature of Witness)  (Printed Name of Witness)  (Date and Time)

4
Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

On June 26, 1998, the immigration officer served Defendant with a "Final Administrative Removal Order," dated June 25, 1998. *Id.* at Ex. B. On July 15, 1998, Defendant was deported to Mexico. *Id.* at Ex. C.

Defendant eventually returned to the United States. It is unclear from the record when Defendant was apprehended in the United States after deportation. However, on January 23, 2002, a "Notice of Intent/Decision to Reinstate Prior Order" was issued requiring Defendant's removal from the United States based on the prior 1998 removal order. *Id.* at Ex. D. The 2002 Order was signed on February 7, 2002. *Id.* Thus, Defendant was removed from the United States again without a hearing before an Immigration Judge.

The record is again unclear when Defendant was apprehended in the United States. However, Defendant eventually returned to the United States once more. In 2014, Defendant was removed from the United States after a hearing before an Immigration Judge.

### B. Procedural History

On February 8, 2018, a grand jury in the Northern District of California returned an indictment, charging Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Re-Entry Following Deportation. ECF No. 1 ("Indictment"). Specifically, the grand jury charged: "[o]n or about April 24, 2014, in Santa Clara County in the Northern District of California, the [Defendant], an alien, previously having been excluded deported and removed from the United States on or about July 15, 1998, February 25, 2002, and March 1, 2014, was found in the United States, with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the defendant for admission into the United States." *Id.*

Defendant filed a motion to dismiss the indictment as to Defendant's 2014 removal on December 5, 2019. ECF No. 13. The government filed an opposition on January 16, 2019. ECF No. 19. Defendant filed a reply on January 23, 2019. ECF No. 20. On February 4, 2019, the Court denied Defendant's motion to dismiss Defendant's indictment as to his 2014 removal. ECF No.

5

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

23.

Defendant filed a motion for leave to file a motion for reconsideration of that Order on February 5, 2019. ECF No. 25. The government filed an opposition on February 19, 2019. ECF No. 28. On April 8, 2019, the Court denied Defendant's motion for leave to file a motion for reconsideration. ECF No. 35.

In the meantime, on February 27, 2019, Defendant filed the instant motion to dismiss the indictment as to Defendant's 1998 administrative removal and the 2002 reinstatement. *See* Mot. After receiving an extension, the government filed an opposition on March 28, 2019. ECF No. 34 ("Opp'n"). Defendant replied on April 9, 2019. ECF No. 36 ("Reply").

On April 19, 2019, the Court ordered additional briefing from both parties. ECF No. 38. Defendant filed his supplemental brief on May 8, 2019. ECF No. 43. The government filed a supplemental brief on May 9, 2019. ECF No. 45.

## I. LEGAL STANDARD

### A. Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or

6

removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## II. DISCUSSION

As aforementioned, to show that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* The Court addresses each prong in turn as to Defendant's 1998 administrative removal. Lastly, the Court discusses the 2002 reinstatement of the 1998 removal order.

### A. Whether Defendant Exhausted Administrative Remedies (Prong 1) and Whether the Deportation Proceedings Deprived Defendant of the Opportunity for Judicial Review (Prong 2)

The first two prongs of § 1326(d) require a defendant collaterally attacking an underlying removal order to (1) exhaust administrative remedies and (2) show that he or she was improperly deprived of the opportunity for judicial review.

7

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

The Ninth Circuit has held that the "first two prongs of § 1326(d) are satisfied if [the defendant's] right of appeal was denied in violation of due process." *United States v. Valdivia-Flores*, 876 F.3d 1201, 1205 (9th Cir. 2017) (citing *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014)). A defendant can waive his or her right to an appeal. *See, e.g.*, *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1045 (9th Cir. 2012).

As to prong 1 of § 1326(d), if a defendant's waiver of appeal was not "considered and intelligent," then the defendant is "exempted from the requirement under 8 U.S.C. § 1326(d)(1) that he exhaust all administrative remedies" because the waiver did not comport with due process. *Id.* ("Because he did not validly waive his right of appeal, [defendant] is exempted from the requirement under 8 U.S.C. § 1326(d)(1) that he exhaust all administrative remedies . . . . because his waiver was not sufficiently 'considered and intelligent' under the Due Process Clause . . . .").

As to prong 2 of § 1326(d), which requires that a defendant show that he was improperly deprived of an opportunity for judicial review, "[w]here a waiver of the right to appeal a removal order is not 'considered and intelligent,' an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review." *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004).

Here, Defendant argues that his waiver of his right to pursue a judicial appeal of the Notice of Intent challenging the legal basis for his 1998 removal—the classification of his 1996 conviction as an aggravated felony—was not considered and intelligent. *Id.* at 6. Per *Valdivia-Flores*, if a defendant "asserts that his waiver was not considered and intelligent, the government must show by clear and convincing evidence that the waiver was valid, and it may not simply rely on the signed document purportedly agreeing to the waiver." *Valdivia-Flores*, 876 F.3d at 1205. The facts in *Valdivia-Flores* are highly analogous to the instant case.

The question before the *Valdivia-Flores* court was whether the notice of intent established that the *Valdivia-Flores* defendant's waiver of his right to pursue a judicial appeal was considered and intelligent because a waiver does not comport with due process when it is not considered and

8

intelligent. *Id.* at 1206; *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 ("A waiver of the right to appeal a removal order does not comport with due process when it is not 'considered and intelligent.'"). The *Valdivia-Flores* defendant was presented with a near-identical notice of intent as in the instant case. The *Valdivia-Flores* notice of intent contained three checkboxes that disclosed grounds upon which the *Valdivia-Flores* defendant could challenge his deportability: (1) "he could assert that he was a 'citizen or national of the United States;' (2) he could assert that he was 'a lawful permanent resident;' and (3) he could claim that he was 'not convicted of the criminal offense described' in the Notice of Intent." 876 F.3d at 1204.

However, the Ninth Circuit found that the *Valdivia-Flores* defendant's waiver of his rights to pursue a judicial appeal was not considered and intelligent, and thus a due process violation. *Id.* at 1206. The *Valdivia-Flores* court came to this conclusion because the notice of intent "did not include an option to contest the classification of the conviction as an aggravated felony, and the only check box relevant to the conviction itself only allowed Valdivia-Flores to contest that he 'was not convicted of the criminal offense described.'" *Id.* at 1206.

Like in *Valdivia-Flores*, here, Defendant's Notice of Intent "did not include an option to contest the classification of the conviction as an aggravated felony." *Id.* Indeed, the only options provided in the Notice of Intent to allow Defendant to contest deportability were on the grounds that Defendant is a United States citizen, national, or permanent resident, or because he was not convicted under Cal. Health & Safety Code § 11352(a). ECF No. 29-1 at Ex. A. These options are identical to the deficient options in the *Valdivia-Flores* defendant's notice of intent. 876 F.3d at 1204.

Moreover, the *Valdivia-Flores* notice of intent's "deficiencies are magnified because [the defendant] was not represented and never had the benefit of appearing before an [immigration judge], who . . . would have adequately conveyed both [his] appeal options and the finality associated with waiving appeal." *Id.* (internal quotation marks omitted). Likewise, here, Defendant was not represented by counsel and did not appear before an immigration judge.

Furthermore, the government has not met its burden of showing through clear and convincing evidence that Defendant's waiver was valid and therefore comported with due process. The government's two and a half page opposition merely repeats what was asked in the Notice of Intent, Opp'n at 2, but fails to demonstrate why Defendant's waiver was valid. *Id.* at 1205 (holding that the government "may not simply rely on the signed document purportedly agreeing to the waiver" to show that a defendant's decision to waive judicial appeal was considered and intelligent). For instance, the government argues that "Defendant chose not to contest the [Notice of Intent]. Defendant admitted to the allegations in the [Notice of Intent]" and "waived his right to file a petition for review of the Final Removal Order." Opp'n at 2. But the government fails to cite *evidence* that shows Defendant's waiver was considered and intelligent. The government has provided only attorney argument that Defendant's waiver was considered and intelligent. Thus, the government has not shown through clear and convincing evidence that Defendant's waiver was valid.

In sum, because the Notice of Intent in this case failed to fully inform Defendant of his right to appeal his deportability, per *Valdivia-Flores*, Defendant has shown that his waiver of judicial review was not considered and intelligent and therefore violates due process. Thus, Defendant is exempted from satisfying prong 1 of § 1326(d), which requires exhaustion of administrative remedies. Under Ninth Circuit law, a defendant who did not validly waive his right to appeal is exempt from the requirement that he exhaust all administrative remedies. *Reyes-Bonilla*, 671 F.3d at 1045 ("Because he did not validly waive his right of appeal, [defendant] is exempted from the requirement under 8 U.S.C. § 1326(d)(1) that he exhaust all administrative remedies before collaterally attacking the 2001 removal order.").

Defendant satisfies prong 2 of § 1326(d)—whether Defendant was deprived of the opportunity for judicial review—because Defendant's waiver of judicial review was invalid because the waiver was not considered and intelligent. "Where a waiver of the right to appeal a removal order is not 'considered and intelligent,' an alien has been deprived of his right to that

10

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

appeal and thus to a meaningful opportunity for judicial review." *Pallares-Galan*, 359 F.3d at 1096.

Next, the Court addresses prong 3 of § 1326(d): whether the entry of the 1998 administrative removal order was fundamentally unfair.

### B. Whether the 1998 Administrative Removal Order was "Fundamentally Unfair" (Prong 3)

"[A]ny alien who is convicted of an aggravated felony . . . is deportable." *Leocal v. Ashcroft*, 543 U.S. 1, 4 (2004) (citing 8 U.S.C. § 1227(a)(2)(A)(iii)). Such an alien is removable from the United States "under an administrative order without appearing before an Immigration Judge." *United States v. Ramos-Medina*, 706 F.3d 932, 935 (9th Cir. 2013) (citing 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(b)). An administrative removal or administrative order of removal means that an alien is removable without "a hearing before an immigration judge" because the removal proceeding is "summary in nature and conducted by front-line immigration enforcement officers employed by [the Department of Homeland Security]." *Gomez-Velazco v. Sessions*, 879 F.3d 989, 991 (9th Cir. 2018).

The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(B) to mean, as relevant here, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." The government bears the burden of proof to show by clear and convincing evidence that a prior conviction is an aggravated felony. *Medina-Lara v. Holder*, 771 F.3d 1106, 1113 (9th Cir. 2014).

Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony satisfies prong 3 of § 1326(d), which requires that the prior removal order be "fundamentally unfair." *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015).

Defendant argues that his prior 1996 heroin conviction under Cal. Health & Safety Code § 11352(a) is not an aggravated felony and thus cannot constitute the basis for Defendant's 1998 administrative removal order or the instant prosecution for illegal reentry under § 1326. Mot. at 7–

11

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

11. Cal. Health & Safety Code § 11352(a) punishes "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance . . . . or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug."

To ascertain whether a state conviction qualifies as an aggravated felony, courts employ the "categorical approach." *Taylor v. United States*, 495 U.S. 575 (1990). "We look only to the 'statutory definitions' of the corresponding offenses." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017) (citing *Taylor*, 495 U.S. at 600). "If a state law 'proscribes the same amount of or less conduct than' that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match." *Martinez-Lopez*, 864 F.3d at 1038 (citing *United States v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014)). If the state offense is broader than the federal offense, courts use the modified categorical approach if the state offense is divisible. Divisible means that the state offense "comprises multiple, alternative versions of the crime." *Descamps v. United States*, 570 U.S. 254, 262 (2013).

Under the modified categorical approach, courts look "beyond the statutory text to a limited set of documents to determine which statutory phrase was the basis for the conviction." *Martinez-Lopez*, 864 F.3d at 1043 (citations and internal quotation marks omitted). Then, the court, reverting back to what is the categorical approach, can "compare" the basis of the prior conviction "with the relevant generic offense" under federal law. *Mathis v United States*, 136 S. Ct. 2243, 2249 (2016).

A Cal. Health & Safety Code § 11352 conviction does not render an alien categorically removable because "section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement." *Martinez-Lopez*, 864 F.3d at 1043. Because Cal. Health & Safety Code § 11352 is divisible, "the modified categorical approach applies." *United States v. Huitron-Rocha*, 771 F.3d 1183, 1184 (9th Cir. 2014).

12

Defendant argues that conduct that violates Cal. Health & Safety Code § 11352(a) that does not constitute an aggravated felony include (1) transportation of the controlled substance for personal use, and (2) offers to transport, furnish, administer, and give away the controlled substance. Mot. at 11; ECF No. 43 at 2. The Court discusses each in turn.

### 1. Transportation for Personal Use

An aggravated felony is defined, *inter alia*, as a drug trafficking offense. 8 U.S.C. § 1101(a)(43)(B). Moreover, the United States Supreme Court has held that in the immigration law context, "[a]mong the crimes that are classified as aggravated felonies . . . are illicit drug trafficking offenses." *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013).

However, "[i]f the state statute criminalizes conduct that would not constitute a drug trafficking offense under federal . . . law, then a prior conviction under that statute does not . . . qualify as an aggravated felony." *Valdivia-Flores*, 876 F.3d at 1209 n.3 (quoting *United States v. Valdavinos-Torres*, 704 F.3d 679, 691 (9th Cir. 2012)).

In 2017, the Ninth Circuit held that "the transportation of a controlled substance for personal use . . . is not a drug trafficking offense." *Martinez-Lopez*, 864 F.3d at 1038 n.3. Thus, transportation of a controlled substance for personal use is not an aggravated felony.

To address the personal use issue, in 2013, the California legislature amended Cal. Health & Safety Code § 11352 to define "transport" of a controlled substance as "transport for sale." However, in 1996, when Defendant was convicted of violating Cal. Health & Safety Code § 11352(a), transport for personal use constituted a violation of § 11352(a) because it predated the 2013 amendment. Therefore, Defendant may have been convicted of transportation of heroin for personal use, which would not constitute a drug trafficking offense and thus would not be an aggravated felony.

The criminal complaint for Defendant's 1996 conviction under Cal. Health & Safety Code § 11352(a) stated that Defendant committed the crime of "SALE/TRANSPORTATION/OFFER TO SELL CONTROLLED SUBSTANCE, in violation of HEALTH AND SAFETY CODE

13

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

SECTION 11352(A)." ECF No. 29-1 at Ex. E. The criminal complaint further states that Defendant "did willfully and unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, heroin." *Id.* It is unclear from the criminal complaint with what *specific* conduct prohibited by Cal. Health & Safety Code § 11352(a) Defendant was charged and prosecuted. The abstract of judgment is similarly opaque about the crime of which Defendant was convicted. The abstract of judgment merely states that Defendant was convicted of "SALES TRANS OFR –HEROIN." *Id.* at Ex. F.

If the record of conviction of a divisible statute does not identify a specific actus reus, the Court must presume "that the conviction rested upon [nothing] more than the least of th[e] acts criminalized." *Moncrieffe*, 569 U.S. at 185 (internal quotation marks omitted). For instance, in *Duran-Jurado v. Keisler*, the Ninth Circuit held that because no "acceptable piece of evidence in the record establishes the factual basis for [defendant's] plea [under § 11352(a)] . . . the government did not carry its burden of establishing 'clearly and unequivocally that [the defendant] was convicted of an aggravated felony.'" 250 Fed. App'x 213, 215 (9th Cir. 2007).

Likewise, the Ninth Circuit in *De Jesus Granados v. Gonzales* noted that the "judicially noticeable facts and documentation in the record do not establish whether [defendant's] conviction under Cal. Health and Safety Code § 11352(a) was for a sale or for a transportation of a controlled substance, and the [Immigration Judge] therefore erred in finding that [defendant's] crime was an aggravated felony. 233 Fed. App'x 691, 692 (9th Cir. 2007); *see also Camacho v. Gonzalez*, 2006 WL 8441973, at \*2 (N.D. Cal. Aug. 23, 2006) ("Thus, simply establishing a conviction under [§ 11352(a)] does not also unambiguously establish that Petitioner engaged in conduct constituting an aggravated felony.").

Thus, in the instant case, the government has not clearly and unambiguously demonstrated that Defendant was convicted of an aggravated felony because Defendant could have been

14

Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002
REINSTATEMENT FROM INDICTMENT

convicted of transporting heroin for personal use, which the Ninth Circuit has held is not a drug trafficking offense and thus an aggravated felony. Next, the Court discusses offers to transport, furnish, administer, and give away the controlled substance.

### 2. Offers to Transport, Furnish, Administer, and Give Away the Controlled Substance

The Ninth Circuit has held that mere offers to commit certain offenses related to a controlled substance are not federal drug trafficking offenses. Specifically, the Ninth Circuit in *Martinez-Lopez* recognizes that "[s]ection 11352(a) is categorically overbroad with regard to its actus reus requirement because it criminalizes the mere 'offer to' commit certain offenses related to a controlled substance." *Martinez-Lopez*, 864 F.3d at 1038 n.3; *see also, e.g.*, *United States v. Rivera-Sanchez*, 247 F.3d 905, 909 (9th Cir. 2001) (en banc) (finding Cal. Health & Safety Code § 1160(a), which pertains to marijuana, overly broad because it criminalizes offers, including offers to "transport," "furnish, administer, or give away," and stating that "[w]e have previously considered whether solicitation offenses are aggravated felonies under 8 U.S.C. § 1101(a)(43)(B) and have concluded that they are not"), *superseded on other grounds* by U.S.S.G. § 2L1.2 cmt. n.4 (2002). Because Cal. Health & Safety Code § 11352(a) punishes various kinds of offers, including offers to "transport," offers to "furnish," offers to "administer" or offers to "give away," Cal. Health & Safety Code § 11352(a) criminalizes "offers" to commit various offenses related to a controlled substance, whereas federal law does not. Therefore, Defendant may have been convicted in 1996 of the crime of offering to "transport," offering to "furnish," offering to "administer," or offering to "give away" a controlled substance under Cal. Health & Safety Code § 11352(a), which would not constitute an aggravated felony.

As aforementioned, in the criminal complaint, the title for Defendant's 1996 conviction under Cal. Health & Safety Code § 11352(a) is "SALE/TRANSPORTATION/OFFER TO SELL CONTROLLED SUBSTANCE," ECF No. 29-1 at Ex. E. Although Defendant admits that "[t]he sale of drugs certainly constitutes trafficking," MTD at 11, Defendant is silent on whether offers to sell constitute an aggravated felony, and the Court has not located any authority addressing that

15

question as it pertains to Cal. Health & Safety Code § 11352(a).

Nonetheless, the Court need not reach that issue because Defendant's criminal complaint is ambiguous. The criminal complaint further states that Defendant "did willfully and unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, heroin." *Id.* It is unclear from the criminal complaint with what specific conduct prohibited by Cal. Health & Safety Code § 11352(a) Defendant was charged and prosecuted.

The abstract of judgment is similarly opaque about the crime of which Defendant was convicted. The abstract of judgment merely states that Defendant was convicted of "SALES TRANS OFR –HEROIN." *Id.* at Ex. F. Moreover, the record does not establish the factual basis for Defendant's plea.

Therefore, under Ninth Circuit precedent, without knowing which specific crime of which Defendant was convicted, the Court must conclude that the Defendant did not commit an aggravated felony. *Moncrieffe*, 569 U.S. at 185 (holding that if the record of conviction of a divisible statute does not identify a specific actus reus, the court must presume that the conviction rested upon nothing more than the least of the acts criminalized). Thus, under Ninth Circuit precedent, the government has not clearly and unambiguously shown that Defendant was convicted of an aggravated felony because Defendant could have been convicted of "offers" to commit various offenses related to heroin, which do not constitute an aggravated felony. *See, e.g.*, *Duran-Jurado*, 250 Fed. App'x at 215 ("Because no other acceptable piece of evidence in the record establishes the factual basis for [defendant's] plea [under § 11352(a)] . . . the government did not carry its burden of establishing 'clearly and unequivocally that [the defendant] was convicted of an aggravated felony.'").

The government raises two arguments in opposition. First, the government argues that Defendant was not prejudiced because during a 1998 interview at the Calipatria State Prison,

16
Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT

Defendant admitted to Deportation Officer Henry Yates "that he entered the United States without inspection, that he had no valid immigration documents, immigration status, or petitions pending to lawfully enter and remain in the United States," and that he "wanted to return to Mexico as soon as possible." Opp'n at 2–3. However, the government's argument does not show that Defendant was not prejudiced. The Ninth Circuit has held that there is prejudice if a defendant shows that the crime of which he or she was convicted was not an aggravated felony. *Martinez*, 786 F.3d at 1230 ("Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously was not, in fact, an aggravated felony, has established . . . that he suffered prejudice as a result."). As discussed above, Defendant has shown that his violation of Cal. Health & Safety Code § 11352(a) was not an aggravated felony. Thus, Defendant suffered prejudice. *Id.*

Second, the government argues that "[a]t the time of Defendant's removal in 1998 and even through 2014, [Cal. Health & Safety Code] § 11352 was categorically an aggravated felony drug trafficking offense." ECF No. 45 at 1. However, recent Ninth Circuit's decisions stating that "section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement," apply retroactively to Defendant's 1996 conviction. *Martinez-Lopez*, 864 F.3d at 1043. "[D]ecisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant." *United States v. Aguilera-Rios*, 769 F.3d 626, 631 (9th Cir. 2014) (quoting *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005)).

In sum, Defendant has demonstrated that his 1996 conviction was not an aggravated felony because Defendant may have been convicted of transporting heroin for personal use or offering to transport, furnish, administer, and give away heroin, which, under Ninth Circuit law, do not constitute aggravated felonies. Defendant has therefore satisfied prong 3 of § 1326(d). Moreover, as discussed above, Defendant is excused from meeting prong 1 of § 1326(d) and has satisfied prong 2 of § 1326(d).

Next, the Court addresses whether Defendant can be prosecuted under 8 U.S.C. § 1326 for illegal reentry following deportation through his 2002 reinstatement of his 1998 removal order.

### C. Whether the 2002 Reinstatement of the 1998 Removal Order Provides an Independent Basis for an 8 U.S.C. § 1326 Prosecution

As discussed above, on January 23, 2002, a "Notice of Intent/Decision to Reinstate Prior Order" was issued requiring Defendant's removal from the United States based on the prior 1998 removal order. Under Ninth Circuit law, a "successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal entry." *United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010).

As discussed above, this Court has determined that Defendant's drug conviction, cited in the 1998 removal order, was not an aggravated felony. Therefore, per *Arias-Ordonez*, the government may not rely on the 2002 reinstatement of the 1998 removal order to prosecute Defendant under 8 U.S.C. § 1326 because Defendant has successfully collaterally attacked his 1998 removal order.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Defendant's 1998 administrative removal and the 2002 reinstatement of the 1998 administrative removal from the indictment is GRANTED.

Both parties agreed that if the Court granted Defendant's motion to dismiss the indictment as to Defendant's 1998 administrative removal and the 2002 reinstatement of the 1998 administrative removal, then Defendant's 2014 removal still independently supports the indictment. ECF No. 43 at 4; ECF No. 45 at 3. Thus, the 2014 removal, which remains a valid predicate removal, independently supports the indictment.

**IT IS SO ORDERED.**

Dated: June 26, 2019

_____
LUCY H. KOH
United States District Judge

18
Case No. 18-CR-00053-LHK
ORDER GRANTING MOTION TO DISMISS 1998 ADMINISTRATIVE REMOVAL AND 2002 REINSTATEMENT FROM INDICTMENT