UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO ROSAS-RAMIREZ,<br><br>Defendant. | Case No. 18-CR-00053-LHK-1<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL**<br><br>Re: Dkt. No. 59 |

Before the Court is Defendant Antonio Rosas-Ramirez's ("Defendant") motion to dismiss the indictment for illegal reentry following deportation in violation of 8 U.S.C. § 1326. ECF No. 59 ("Mot."). Having considered the filings of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss the Indictment as to the 2014 removal.

**I.  BACKGROUND**

**A. Factual Background**

In 1996, Defendant was convicted of one count of a violation of Cal. Health & Safety Code § 11352. ECF No. 29-1 at Ex. F. Defendant was sentenced to three years of imprisonment. *Id.* On June 24, 1998, an immigration officer served Defendant with a "Notice of Intent to Issue a Final Administrative Removal Order" ("Notice of Intent"). *Id.* at Ex. A. The Notice of Intent

stated that Defendant was a citizen of Mexico and that Defendant had entered the United States on or about January 1994 without inspection. *Id.* The Notice of Intent further stated that Defendant had been convicted in the California Superior Court for the County of Santa Cruz for violating Cal. Health & Safety Code § 11352. *Id.* The Notice of Intent indicated that Defendant was deportable without appearing before an Immigration Judge because Defendant had been convicted of an aggravated felony "as defined in section 101(a)(43) of the Act, 8 U.S.C. 1101(a)(43)." *Id.*

The Notice of Intent contained a section entitled "I Wish to Contest," which contained four checkbox options for grounds on which Defendant could have contested Defendant's deportability. *Id.* Defendant did not check any of the boxes to complete this section. *Id.* By contrast, Defendant signed and completed a section of the Notice of Intent entitled "I Do Not Wish to Contest." *Id.* Defendant signed the "I Do Not Wish to Contest" section on June 24, 1998 at 13:00, witnessed by the immigration officer who served the Notice of Intent. *Id.* On June 26, 1998, the immigration officer served Defendant with a "Final Administrative Removal Order," dated June 25, 1998. *Id.* at Ex. B. On or about July 15, 1998, Defendant was deported to Mexico. *Id.* at Ex. C.

Defendant eventually returned to the United States. It is unclear from the record when Defendant was apprehended in the United States. However, on January 23, 2002, a "Notice of Intent/Decision to Reinstate Prior Order" was issued that required Defendant's removal from the United States based on the prior 1998 removal order. *Id.* at Ex. D. Thus, Defendant was removed from the United States without a hearing before an immigration judge. On or about February 25, 2002, Defendant was once again deported to Mexico. ECF No. 1.

Eventually, at an unspecified time, Defendant returned to the United States once more. On February 12, 2014, United States Immigration and Customs Enforcement ("ICE") agents apprehended Defendant in Redwood City, California, and took Defendant into custody. ECF No. 60-1 ¶ 3. On February 13, 2014, the United States Department of Homeland Security prepared a Form I-862, Notice to Appear ("NTA"). ECF No. 59-1. The NTA alleged that Defendant would be placed in removal proceedings under 8 U.S.C. § 1229. *Id.* The NTA did not identify the

2

Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

United States District Court
Northern District of California

address of the Immigration Court at which the NTA would be filed. *Id.* Instead, the space on the NTA that specified the "Complete Address of Immigration Court, including Room Number, if any," stated only "to be set." *Id.* Defendant was detained by ICE through the pendency of the removal proceedings. ECF No. 60 at 2.

On February 18, 2014, the Immigration Court sent Defendant a "Notice of Hearing in Removal Proceedings." ECF No. 59-2. The Notice of Hearing in Removal Proceedings indicated that Defendant's hearing would occur on February 27, 2014, at 9:30 a.m. before the Immigration Court in San Francisco. *Id.* Defendant appeared at the Immigration Court in San Francisco on February 27, 2014. Mot. at 2. Defendant was assisted by a translator, and Defendant was not represented by counsel. *Id.* At the conclusion of the hearing, an immigration judge ordered that Defendant be removed to Mexico. ECF No. 59-3. On or about March 1, 2014, Defendant was again deported to Mexico. ECF No. 1.

On or about April 24, 2014, Defendant was apprehended in the United States once again. *Id.*

### B. Procedural History

On February 8, 2018, a grand jury in the Northern District of California returned an indictment ("Indictment") that charged Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Reentry Following Deportation. ECF No. 1 ("Indictment"). Specifically, the grand jury charged as follows: "On or about April 24, 2014, in Santa Clara County in the Northern District of California, the [D]efendant, . . . an alien, previously having been excluded, deported and removed from the United States on or about July 15, 1998, February 25, 2002, and March 1, 2014, was found in the United States, with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the [D]efendant for admission into the United States." *Id.*

Defendant filed a motion to dismiss the Indictment as to Defendant's 2014 removal on December 5, 2019. ECF No. 13. The government opposed the motion on January 16, 2019. ECF No. 19. Defendant filed a reply on January 23, 2019. ECF No. 20. On February 4, 2019, the

3

1  Court denied Defendant's motion to dismiss the Indictment as to Defendant's 2014 removal. ECF
2  No. 23.

On February 27, 2019, Defendant filed a motion to dismiss the Indictment as to Defendant's 1998 administrative removal and the 2002 reinstatement. ECF No. 29. The government opposed the motion on March 28, 2019, ECF No. 34, and Defendant replied on April 9, 2019, ECF No. 36. On April 19, 2019, the Court ordered supplemental briefing from both parties. ECF No. 38. Defendant filed a supplemental brief on May 8, 2019, ECF No. 43, and the government filed a supplemental brief on May 9, 2019, ECF No. 45. On June 26, 2019, the Court granted Defendant's motion to dismiss the Indictment as to Defendant's 1998 administrative removal and the 2002 reinstatement. ECF No. 52. The Court explained, however, that Defendant's 2014 removal served as a valid predicate removal, and that therefore "Defendant's 2014 removal still independently supports the indictment." *Id.* at 18. The 2014 removal is the sole remaining removal that serves as a predicate for the single count violation of 8 U.S.C. § 1326, Illegal Reentry Following Deportation, charged in the Indictment.

On October 2, 2019, Defendant filed the instant motion to dismiss the Indictment as to the Defendant's 2014 removal. Mot. On October 23, 2019, the government opposed the motion, ECF No. 60 ("Opp'n"), and on November 6, 2019, Defendant replied, ECF No. 61 ("Reply).

## II. LEGAL STANDARD

### A. Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448,

4

1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

In Defendant's motion to dismiss the Indictment as to Defendant's 2014 removal, Defendant asserts that the United States Department of Homeland Security's failure to file a proper Form I-862, Notice to Appear ("NTA"), with the Immigration Court deprived the Immigration Court of jurisdiction to remove Defendant. Defendant asserts that this failure provides the grounds for Defendant to collaterally attack the 2014 removal under 8 U.S.C. § 1326(d).

For the reasons below, the Court agrees with Defendant. The Immigration Court lacked jurisdiction over Defendant because of the defective NTA. Further, this lack of jurisdiction permits Defendant to collaterally attack the 2014 removal under 8 U.S.C. § 1326(d).

## A. The Immigration Court Lacked Jurisdiction over Defendant

Defendant argues that the 2014 removal cannot constitute a prior lawful deportation that supports the single count violation of 8 U.S.C. § 1326, Illegal Reentry Following Deportation, charged in the Indictment. Mot. at 1. This is so, Defendant claims, because the NTA "did not identify the immigration court address where the putative NTA would be filed, which is a jurisdictional requirement under the regulatory scheme and 8 C.F.R. § 1003.15(b)(6)." *Id.* at 2. The government makes two responses to this argument. First, the government asserts that the requirements of 8 C.F.R. § 1003.15(b) are not actually jurisdictional in nature. Instead, the government maintains that 8 C.F.R. § 1003.15(b) contains only "claim-processing rules" that do not limit the Immigration Court's adjudicatory authority. Opp'n at 3–9. Second, the government asserts that even if 8 C.F.R. § 1003.15(b) is jurisdictional in nature, Defendant had "actual notice" of the removal hearing such that jurisdiction adequately vested in the Immigration Court in any event. *Id.* at 9–10. The Court agrees with Defendant. The defective NTA deprived the Immigration Court of jurisdiction over Defendant for the purposes of the 2014 removal. The government's actions following the filing of the defective NTA did not vest the Immigration Court with jurisdiction.

The Court begins by providing a brief background of the statutory and regulatory scheme that sets forth the contents an NTA must contain. The Court then analyzes the question of whether 8 C.F.R. § 1003.15(b) sets forth a jurisdictional rule. Finally, the Court examines whether Defendant's purported "actual notice" of the address of the Immigration Court in which the NTA was filed may remedy a jurisdictional defect in the NTA.

### 1. Statutory and Regulatory Background

The Court begins by providing background on the regulatory scheme that sets forth the content that an NTA must contain. The Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, broadly delegates authority to the Attorney General to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section." 8 U.S.C. § 1103(g)(2). Pursuant to this grant of authority, the Attorney General has promulgated regulations that speak to

6

Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

the "[j]urisdiction and commencement of proceedings" in Immigration Court. 8 C.F.R. § 1003.14. In particular, 8 C.F.R. § 1003.14(a) dictates that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" is defined in the regulations to consist of several types of documents, potentially including "a Notice to Appear." 8 C.F.R. § 1003.13. Finally, the regulations require that an NTA contain certain information. 8 C.F.R. § 1003.15(b). Importantly for the instant case, the regulations dictate that an NTA "must" include the "address of the Immigration Court where the Service will file" the NTA. 8 C.F.R. § 1003.15(b)(6).

It is undisputed that the NTA at issue in the instant case lacked the "address of the Immigration Court where the Service" would file the NTA, as required by 8 C.F.R. § 1003.15(b)(6). ECF No. 59-2. Accordingly, the first question before the Court is whether 8 C.F.R. § 1003.15(b) sets forth a jurisdictional rule, such that the NTA's failure to include the "address of the Immigration Court where the Service will file" the NTA deprived the Immigration Court of jurisdiction over Defendant's 2014 removal.

### 2. 8 C.F.R. § 1003.15(b) Sets Forth a Jurisdictional Rule

Defendant's motion to dismiss the Indictment as to the 2014 removal is premised on the argument that 8 C.F.R. § 1003.15(b) sets forth a rule that governs the jurisdiction of the Immigration Court. As Defendant puts it, the "regulation requiring identification of the court address where the NTA will be filed goes to the authority of the immigration court to adjudicate a case—*i.e.*, to the court's subject matter jurisdiction." Reply at 9. The government disagrees, and argues that the regulation only sets forth a "claim-processing rule." Opp'n at 4. Thus, the government claims that the failure to include the Immigration Court address in the NTA did not deprive the Immigration Court "of 'jurisdiction' over Defendant's removal proceedings insofar as it concerned the court's adjudicatory authority." *Id.*

The Court agrees with Defendant. The requirement that an NTA include the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6), is

jurisdictional in nature. The Court reaches this conclusion because it is bound by a recent Ninth Circuit decision, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). According to Defendant, the Ninth Circuit's recent decision in *Karingithi* held that the applicable regulations "govern the subject matter jurisdiction" of the Immigration Court. Reply at 1. Thus, because "*Karingithi* is binding on this Court," Defendant claims that the Court must reject Defendant's argument that 8 C.F.R. § 1003.15(b) only sets forth a claim-processing rule. The Court agrees. *Karingithi* stands for the proposition that 8 C.F.R. § 1003.15(b) is jurisdictional in nature.

In *Karingithi*, the Ninth Circuit considered the question of whether the Immigration Court lacked jurisdiction over removal proceedings when the NTA that served as the charging document failed to specify the date and time of the removal hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i). *Id.* at 1159–60. The Ninth Circuit answered this question in the negative. *Id.* at 1160. In the course of doing so, the Ninth Circuit held that "the regulations, not § 1229(a), define when jurisdiction vests." Accordingly, because the operative regulations indicate that the date and time of the removal hearing need only be provided "where practicable," 8 C.F.R. § 1003.18(b), the Ninth Circuit held that omission of that information did not affect the Immigration Court's ability to hold a removal hearing. 913 F.3d at 1160. As the Ninth Circuit put it, "[t]he regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear *met the regulatory requirements and therefore vested jurisdiction in the IJ*." *Id.* (emphasis added).

The natural import of the *Karingithi* court's holding is that "[t]he regulatory definition" of an NTA "governs the Immigration Court's jurisdiction." *Id.* The regulatory definition of an NTA includes the requirement that an NTA include the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6). Thus, the requirement outlined in 8 C.F.R. § 1003.15(b)(6) "governs the Immigration Court's jurisdiction." This is precisely the conclusion at which most of the district courts in the Ninth Circuit have arrived when confronted with the applicability of *Karingithi*'s holding to the question before the Court. *See, e.g.*, *United States v.*

8

Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

*Suchite-Ramirez*, No. 19-CR-00118-RMP, 2019 WL 4396142, at *2 (E.D. Wash. Sept. 13, 2019) (holding that the government's argument that 8 C.F.R. § 1003.15(b)(6) is claim-processing "directly contradicts the Ninth Circuit's reasoning in *Karingithi*"); *United States v. Gutierrez-Ramirez*, No. 18-CR-00422-BLF, 2019 WL 3346481, at *6 (N.D. Cal. July 25, 2019) ("[I]t is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional."); *United States v. Ramos-Urias*, No. 18-CR-00076-JSW, 2019 WL 1567526, at *2 (N.D. Cal. Apr. 8, 2019) ("*Karingithi* and *Bermudez-Cota* teach that satisfying the regulations, not the statute, is crucial to establish the Immigration Court's jurisdiction.").

As discussed *supra*, the language of the regulations governing the jurisdiction of the Immigration Court also supports the *Karingithi* court's conclusion. The regulations provide that jurisdiction "vests" only "when a charging document is filed with the Immigration Court," 8 C.F.R. § 1003.14, and a "Notice to Appear," is such a "charging document," 8 C.F.R. § 1003.13. The regulation at 8 C.F.R. § 1003.15(b)(6) provides that an NTA "must also include" "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." *Id.* Thus, by the plain language of the regulations, a document that lacks "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear" is not an NTA, and therefore cannot "vest" jurisdiction with the Immigration Court. 8 C.F.R. §§ 1003.14, 1003.15(b)(6).

Further, as United States District Judge Jeffrey White has noted, 8 C.F.R. §§ 1003.15(a) and (c) contain a disclaimer that omission of the information mandated by those sections "shall not be construed as affording the alien any substantive or procedural rights." 8 C.F.R. § 1003.15(a), (c); *Ramos-Urias*, 2019 WL 1567526, at *2. By contrast, the regulation at issue in the instant motion, 8 C.F.R. § 1003.15(b), lacks such a disclaimer, which further confirms the jurisdictional scope of 8 C.F.R. § 1003.15(b).

For instance, as Judge White noted, 8 C.F.R. § 1003.15(c) dictates that "[i]n the Notice to Appear for removal proceedings, the Service shall provide the following administrative information to the Immigration Court." Section 1003.15(c) goes on to list various pieces of

9
Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

information, such as the "alien's names and any known aliases," and the "alien's address." *Id.* However, the section contains the aforementioned disclaimer, and the regulation thus dictates that omission of the required information "shall not be construed as affording the alien any substantive or procedural rights." *Id.* Section 1003.15(a), which only concerns orders to show cause, also contains the foregoing disclaimer. 8 C.F.R. § 1003.15(a).

By contrast, 8 C.F.R. § 1003.15(b), the regulatory section at issue in the instant motion, does not contain the disclaimer. The natural reading of the lack of disclaimer is that omission of the information required by 8 C.F.R. § 1003.15(b)(6) *does* afford the alien "substantive or procedural rights," in contrast to 8 C.F.R. §§ 1003.15(a) and (c). *See, e.g.*, *United States v. Ramos-Urias*, 2019 WL 1567526, at *2 ("The Court agrees with Mr. Ramos-Urias that the absence of the disclaimer in subsection (b) is significant. . . . Drafters of regulations and statutes are presumed to choose their words with precision." (citations omitted)).

As Judge White noted, this distinction "is particularly sensible." *Id.* at *3. While 8 C.F.R. §§ 1003.15(a) and (c) both "describe categories of identifying information of which an alien is likely already aware," such as the alien's name and known aliases, 8 C.F.R. § 1003.15(b) demands that an NTA include information about *the removal process itself*. *Id.* "It is logical that an NTA's failure to include an alien's alias or preferred language, for example, would not carry the same consequences as an NTA's failure to include . . . the address of the Immigration Court where the NTA would be filed." *Id.*

In response, the government argues that insofar as *Karingithi* may be read to discuss the jurisdictional import of 8 C.F.R. § 1003.15(b)(6), this discussion is dicta. Opp'n at 3–4; *see also United States v. Diaz-Lastra*, No. 19-CR-00396-DWL, 2019 WL 4394542, at *3 (D. Ariz. Sept. 13, 2019) ("Those passages, however, are arguably dicta because they were unnecessary to the [*sic*] resolve the narrow issue before the court. . . ."). The Court disagrees. The *Karingithi* court's discussion of the jurisdictional nature of the regulations served as the point of comparison that the *Karingithi* court used to resolve the question that the *Karingithi* court faced. The *Karingithi* court thus squarely confronted "an issue germane to the eventual resolution of the case, and resolve[d] it

10

after reasoned consideration in a published opinion." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003). The *Karingithi* court's determination that the regulations set forth jurisdictional requirements for the Immigration Court is not dicta. *Id.*; *see also Gutierrez-Ramirez*, 2019 WL 3346481, at *6 ("*Karingithi* clearly contemplates that the requirements in Section 1003.15 are 'for jurisdictional purposes.'").

Additionally, according to the government, "*Karingithi* did not address the meaning of the term 'jurisdiction' as recited in 8 C.F.R. § 1003.14(a)." Opp'n at 3; *see also United States v. Medina*, No. 18-CR-653-GW, 2019 WL 4462701, at *6 (C.D. Cal. Sept. 4, 2019) ("[N]owhere in decision [*sic*] does the Circuit indicate that the reference to 'jurisdiction' means 'subject matter jurisdiction' rather than other types of jurisdiction."). Thus, the government argues, *Karingithi* may be read to refer to only to a claim-processing rule. The plain import of the *Karingithi* court's language, however, suggests that the *Karingithi* court was concerned with more than just a claim-processing rule. For instance, the *Karingithi* court repeatedly pointed to the regulations as dispositive of when jurisdiction "vests" with the Immigration Court, and when the Immigration Court has jurisdiction "over [] removal proceedings." 913 F.3d at 1160, 1162. This language suggests that the Ninth Circuit's references to jurisdiction refer to subject matter jurisdiction. *See United States v. Cruz-Aguilar*, 394 F.Supp.3d 1313, 1318–19 (E.D. Wash. 2019) (reading Karingithi to proscribe "subject matter jurisdiction over a noncitizen's removal proceeding").

Indeed, other federal courts of appeals have understood the *Karingithi* language in this way. *See, e.g.*, *United States v. Cortez*, 930 F.3d 350, 359 (4th Cir. 2019) (citing *Karingithi* as an example of a case in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration court's adjudicatory authority or 'subject matter jurisdiction'"). The parties in *Karingithi* also clearly briefed the issue in this way. *See, e.g.*, *Karingithi*, CA No. 16-70885, Supp'l Brief for Pet'r, Dkt. 56 at 19 (discussing the regulations' impact on "subject matter jurisdiction"); *id.*, Supp'l Brief for Resp., Dkt. 57 at 7 ("Under the controlling regulations, the Immigration Court had subject-matter jurisdiction over Karingithi's removal proceedings.").

Some district courts have attempted to limit the import of *Karingithi* by concluding that

11
Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

*only some* of the applicable regulations are jurisdictional in nature. For instance, in *United States v. Arteaga-Centeno*, No. 18-CR-00332-CRB, 2019 WL 3207849 (N.D. Cal. July 16, 2019), the court held that *Karingithi* should be read to indicate that "the jurisdictional provisions of the regulations are limited to §§ 1003.13–14," and do not include 8 C.F.R. § 1003.15. *Id.* at *7; *see also Diaz-Lastra*, 2019 WL 4394542, at *3 (same). The government does not press this interpretation of *Karingithi* in the instant case. On the contrary, the government's argument specifically hinges on the proposition that 8 C.F.R. § 1003.14 is *also* not jurisdictional. *E.g.*, Opp'n at 6 ("8 C.F.R. § 1003.14(a) is a claim-processing rule, not a jurisdictional one."). As a general matter, the Court agrees that it would be improper to needlessly "contort *Karingithi*" when "it is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional." *Gutierrez-Ramirez*, 2019 WL 3346481, at *6.

Finally, in the course of its argument, the government cites various decisions from "the Fourth, Fifth, Seventh, and Eleventh Circuits" as persuasive authority for the proposition that 8 C.F.R. § 1003.15(b) is not jurisdictional. Opp'n at 8–9. These cases undercut the government's argument, however. This is so because the authoring courts recognized that their decisions contradict *Karingithi*, and hence reached a conclusion contrary to Ninth Circuit law. *See, e.g.*, *Perez-Sanchez v. United States Attorney Gen.*, 935 F.3d 1148, 1155 (11th Cir. 2019) (listing the Ninth Circuit as a circuit that has "accepted the proposition that 8 C.F.R. § 1003.14 sets forth a jurisdictional rule"); *Cortez*, 930 F.3d at 359 (4th Cir. 2019) (citing *Karingithi* as an example of a case in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration court's adjudicatory authority or 'subject matter jurisdiction'"). This Court is bound by the case law of the Ninth Circuit.

Accordingly, the Court agrees with Defendant that "[t]his Court is bound by *Karingithi*," and *Karingithi* stands for the proposition that 8 C.F.R. § 1003.15(b) sets forth a jurisdictional rule.[1] Reply at 2, 6. The Court proceeds to consider the government's argument that Defendant's

---

[1] In light of the controlling nature of *Karingithi*, the Court need not reach Defendant's argument that the government is judicially estopped from adopting the litigation position it adopts in the

12
Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

"actual notice" of the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6), nonetheless remedied this jurisdictional defect.

### 3. Defendant's Purported "Actual Notice" of the Address of the Immigration Court Did Not Vest the Immigration Court with Jurisdiction

The government asserts that even if the Court concludes that the requirement of 8 C.F.R. § 1003.15(b)(6) is jurisdictional, the Court should still find that the Immigration Court had jurisdiction over removal proceedings in the instant case. Opp'n at 10. According to the government, "multiple documents" may be used to provide "the requisite notice under" 8 C.F.R. § 1003.15(b)(6). *Id.* Further, the government claims that because "Defendant was personally brought to the Immigration Hearing as he was in custody," Defendant "had actual notice and personally appeared" at the removal hearing. *Id.* The government asserts that these facts are sufficient to "properly vest" jurisdiction in the Immigration Court. *Id.* Defendant responds that the government's arguments are invalid under another Ninth Circuit decision, *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019). The Court agrees with Defendant that Defendant's purported "actual notice" of the address of the Immigration Court in the instant case was inadequate to confer jurisdiction on the Immigration Court in light of the defective NTA.

District Judge Beth Labson Freeman confronted a similar set of issues in *United States v. Gutierrez-Ramirez*, 2019 WL 3346481. In *Gutierrez-Ramirez*, United States District Judge Freeman examined the government's argument that even though an NTA was deficient under 8 C.F.R. § 1003.15(b), a subsequent "Notice of Hearing and actual proceedings cured this deficiency." *Id.* at *6. Judge Freeman held that this argument failed "for both factual and legal reasons." *Id.* First, with respect to the factual reasons that the argument failed, Judge Freeman explained that "there is no evidence that Defendant's Notice of Hearing was ever served on him or that it was ever filed with the Immigration Court." *Id.* Thus, "even if a properly served and filed Notice of Hearing could cure a faulty Notice to Appear," Judge Freeman held that there was insufficient evidence that anything to that effect had happened in *Gutierrez-Ramirez*. *Id.* Second,

---

instant case. Reply at 2.

Judge Freeman relied on the Ninth Circuit's decision in *Lopez*, 925 F.3d 396, to conclude that "[n]othing in the regulations supports" a holding that a Notice of Hearing or a "Defendant's appearance at the proceeding" could cure a violation of 8 C.F.R. § 1003.15(b)(6). *Id.* at *7 (citing *Lopez*, 925 F.3d 396 (9th Cir. 2019)).

The Court agrees with Judge Freeman's analysis of this issue. Here, both factual and legal issues preclude the government's arguments in the instant case as well. As a factual matter, the government argues that "multiple documents [may] provide the requisite notice under 8 C.F.R. §§ 1003.14(a) and 1003.15(b)," but there is no evidence that additional documents ever fulfilled the requirements of 8 C.F.R. § 1003.15(b) in the instant case. While the government cites a declaration that discusses a hypothetical "'Notice of Filing' that provides the address at which the individual's Notice to Appear will be filed," ECF No. 60-1 at 3, there is no indication that Defendant ever received any such document.

The record does contain a "Notice of Hearing," on the other hand, but this document does not contain a complete address for Defendant's removal hearing.[2] ECF No. 59-2. Further, similar to *Gutierrez-Ramirez*, 2019 WL 334648, the Notice of Hearing only indicates that the Notice of Hearing was mailed to Defendant through a "custody officer."[3] *Id.* "There is no evidence that the Custodian Officer ever actually served the Notice of Hearing on Defendant." *Gutierrez-Ramirez*, 2019 WL 334648, at *6. Moreover, "there is no evidence that the Notice of Hearing was ever filed with the Immigration Court," as would be required for it to independently function as a kind of "amended charging document" under 8 C.F.R. § 1003.14. *Id.* These "issues render the Notice of Hearing non-curative here." *Id.* In light of the foregoing, the government largely seeks to rely on the fact that Defendant was "personally brought to the Immigration Hearing as he was in

---

[2] As a general matter, Defendant also notes that "[t]he location of the initial removal hearing need not necessarily be the address where the Immigration Court is located." *Gutierrez-Ramirez*, 2019 WL 3346481, at *5; Reply at 12. Defendant does not affirmatively contend that these locations differed in the instant case, however. The Court therefore assumes for the sake of the instant motion that the two addresses in Defendant's case were the same.

[3] The Notice of Hearing identifies a "custody officer" as the recipient address for Defendant even though the Notice of Hearing provides that the Defendant himself can be the recipient. ECF No. 59-2.

14
Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

custody." Opp'n at 10.

However, the government's arguments are also legally foreclosed. With respect to the curative potential of a Notice of Hearing, as Judge Freeman observed, "nothing in the regulations indicates that the Government can cure a non-compliant Notice to Appear by serving a non-compliant Notice of Hearing, even if the Notice of Hearing includes the information the Notice to Appear originally omitted." *Gutierrez-Ramirez*, 2019 WL 334648, at *7.

In *Lopez*, the Ninth Circuit concluded that "a Notice to Appear that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing." *Id.* at 405. As Judge Freeman explained, the Ninth Circuit's logic in *Lopez* is applicable to the instant case. As in *Lopez*, "the regulations define the enumerated requirements of a Notice to Appear, such that any document containing less than the full set of requirements is not a Notice to Appear within the meaning of the regulations." 2019 WL 334648, at *7 (internal quotation marks and alterations omitted) (quoting *Lopez*, 925 F.3d at 400). The *Lopez* court also explained that the "phrase 'notice of hearing'—or anything resembling it—does not appear in the law." *Lopez*, 925 F.3d at 401. Further, the *Lopez* court relied on the fact that the applicable statutory provision contemplated "service of a single document—not multiple." *Id.* at 402. The same is true under the regulations in the instant case, which describe "a charging document," 8 C.F.R. § 1003.14(a), and "[t]he Notice to Appear," 8 C.F.R. §§ 1003.13, 1003.15(b). Finally, the Ninth Circuit emphasized the fact that the "requirements of a Notice to Appear . . . are 'substantive.'" *Lopez*, 925 F.3d at 404. In the instant case, the regulations similarly suggest that 8 C.F.R. § 1003.15(b) provides "substantive or procedural rights," since it does not include the disclaimer contained in 8 C.F.R. §§ 1003.15(a), (c). 8 C.F.R. § 1003.15(b). *See Gutierrez-Ramirez*, 2019 WL 3346481, at *7 (explaining that 8 C.F.R. § 1003.15(b) appears to contemplate "substantive and procedural" rights); *see also Ramos-Urias*, 2019 WL 1567526, at *3 ("[T]he Court can find no regulatory support for the proposition that a notice of hearing cures a regulatorily-deficient NTA or can serve as a separate charging document.").

The Court also finds the government's argument that an alien's physical presence at a

removal hearing alone can cure a jurisdictional defect under 8 C.F.R. § 1003.15(b) to be unavailing for the "same reasoning" as above, and because "[n]othing in the regulations supports such a holding." *Id.*; *see also United States v. Rojas Osorio*, No. 17-CR-00507-LHK, 2019 WL 235042, at *9 (N.D. Cal. Jan. 16, 2019), *vacated on other grounds by United States v. Rojas-Osorio*, 381 F. Supp. 3d 1216 (N.D. Cal. 2019) ("[T]he Defendant's appearance at the removal hearing does not satisfy the 'charging document' requirement to vest the IJ with jurisdiction."). To accept the government's argument on this front would be to "all but eliminate the need to ensure that a Notice to Appear actually conforms to the enumerated mandates of § 1003.15," and would "render the mandates of § 1003.15 illusory and unenforceable." *United States v. Martinez-Aguilar*, No. 18-CR-00300-SVW, 2019 WL 2562655, at *4 (C.D. Cal. June 13, 2019); *see also Rojas Osorio*, 2019 WL 235042 ("Subject matter jurisdiction cannot be waived.").

The Court therefore concludes that Defendant's purported "actual notice," based on either the Notice of Hearing or Defendant's presence at the removal proceeding, did not cure the jurisdictional defect caused by the NTA's violation of 8 C.F.R. § 1003.15(b). The Court therefore concludes that the Immigration Court lacked jurisdiction over the 2014 removal. The Court proceeds to consider whether Defendant satisfies the requirements of 8 U.S.C. § 1326(d).

**B. Defendant Satisfies the Requirements of 8 U.S.C. § 1326(d)**

The Court now analyzes the above findings in the context of 8 U.S.C. § 1326(d), which provides three prongs that a defendant must establish to successfully collaterally attack his prior removal order. "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Raya-Vaca*, 771 F.3d at 1201 (internal quotation marks, citation, and brackets omitted). Accordingly, the government argues that Defendant cannot satisfy the third prong of 8 U.S.C. § 1326(d). Opp'n at 13–15.

The Court notes that numerous district courts have held that the requirements of 8 U.S.C. § 1326(d) do not apply to defendants who challenge the validity of a deportation order when the Immigration Court lacked jurisdiction over the removal proceeding. *See, e.g.*, *Martinez-Aguilar*,

16

Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

2019 WL 2562655, at *4 ("[B]ecause the Notice to Appear issued to Defendant was jurisdictionally deficient, the subsequent removal order which caused Defendant to be deported was invalid as issued without proper jurisdiction, and Defendant does not need to show that he was prejudiced by the lack of jurisdiction before the Immigration Court."); *United States v. Quijada-Gomez*, 360 F. Supp. 3d 1084, 1094 (E.D. Wash. 2018) ("[A] challenge to the immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral attacks.").

United States District Judge Charles Breyer explained this conclusion in *United States v. Arteaga-Centeno*, 353 F. Supp. 3d 897 (N.D. Cal. 2019), *vacated on other grounds by United States v. Arteaga-Centeno*, 2019 WL 1995766. In *Arteaga-Centeno*, Judge Breyer explained that for the purposes of 8 U.S.C. § 1326(d), there is a distinction between "jurisdictionally-invalid orders and orders that are invalid for any other reasons." 353 F. Supp. 3d at 903. Judge Breyer noted that Ninth Circuit precedent compels the conclusion "that if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." *Id.* (internal alteration and quotation marks omitted) (quoting *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930)). The government's argument that 8 U.S.C. § 1326(d) applies "to jurisdictionally-invalid orders, . . . is thus precluded by the Ninth Circuit's requirement that courts must disregard invalid orders and that such orders are legal nullities." *Id.* (internal alteration and quotation marks omitted) (quoting *Wilson*, 41 F.2d at 706). Simply put, a Defendant's challenge to a jurisdictionally deficient removal order "is not a 'collateral challenge' to his deportation order, because there is no removal order to be collaterally attacked." *Id.*

In the instant case, the Court need not resolve the question of whether the foregoing analysis is correct, because Defendant meets the requirements of 8 U.S.C. § 1326(d). The Court finds that the 2014 removal was "fundamentally unfair" under 8 U.S.C. § 1326(d)(3). First, because jurisdiction never vested in the Immigration Court, the 2014 removal violated Defendant's due process rights. Courts in this circuit have held that when the Immigration Court enters a removal order without jurisdiction over a defendant, the Immigration Court violates the

17

Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL

defendant's due process rights. *See, e.g.*, *United States v. Erazo-Diaz*, No. 18-CR-00311-TUC, 2018 WL 63222168, at *5 (D. Ariz. Dec. 4, 2018) ("The Court agrees that the order of removal is fundamentally unfair under § 1326(d)(3). Because it was entered without jurisdiction, it was a violation of Defendant's due process rights."); *see also United States v. Rodriguez-Rosa*, No. 18-CR-00079-MMD, 2018 WL 6635286, at *4 (D. Nev. Dec. 11, 2018) (finding fundamental unfairness where the immigration court did not have jurisdiction).

Second, in light of the defective NTA, Defendant was prejudiced because he was "removed when he should not have been." *See United States v. Aguilera-Rosa*, 769 F.3d 626, 630, 636 (9th Cir. 2014); *see also United States v. Camacho-Lopez*, 540 F.3d 928, 930 (9th Cir. 2006) ("Camacho was removed when he should not have been and clearly suffered prejudice."). The government attempts to distinguish the foregoing case law, and argues that the case law has "nothing to do with the content of an NTA." Opp'n at 14. However, the Ninth Circuit's holdings are readily applicable to the context of a jurisdictionally defective NTA. As the Ninth Circuit has explained, even if the Immigration Court would have otherwise been able to remove Defendant "through a formal removal proceeding" that was jurisdictionally sound, Defendant's "removal on illegitimate grounds is enough to show prejudice." *United States v. Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018). Having shown a due process violation and prejudice, the Court concludes that Defendant has met his burden to show "fundamental unfairness."

In the instant case, Defendant has demonstrated a violation of his due process rights. Accordingly, Defendant "need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2)." *Ramos-Urias*, 348 F. Supp. 3d at 1037; *see also Gutierrez-Ramirez*, 2019 WL 3346481, at *8 ("Because Defendant has demonstrated that his removal was fundamentally unfair, 'he need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2).'")*, Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective [Notice to Appear] if he 'show[s] that the Immigration Court lacked jurisdiction'" (citation omitted)); *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th

18

Cir. 1982) ("Exhaustion of administrative remedies is not required where . . . the administrative proceedings themselves are void."); *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir. 1972) (explaining that exhaustion of administrative remedies is not required where "the agency lacks power or jurisdiction to proceed").

In sum, Defendant has shown that Defendant is entitled to relief. Defendant's 2014 removal is void because the Immigration Court lacked jurisdiction over the removal proceedings. As the 2014 removal is void, the Court finds that the government cannot establish a predicate element—the prior removal or deportation of Defendant—of the sole offense in the Indictment. *See Raya-Vaca*, 771 F.3d at 1201. Accordingly, the Court GRANTS the motion to dismiss the Indictment with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the Indictment as to the 2014 removal. The Indictment in the instant case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: November 26, 2019

_____
LUCY H. KOH
United States District Judge

19
Case No. 18-CR-00053-LHK-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT AS TO 2014 REMOVAL