United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO ROSAS-RAMIREZ,<br><br>Defendant. | Case No.   5:18-cr-00053-EJD-1<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT**<br><br>Re: Dkt. No. 122 |

Before the Court is Defendant Antonio Rosas-Ramirez's ("Defendant") motion to dismiss his indictment for unlawful reentry pursuant to 8 U.S.C. § 1326(d).  Mot., ECF No. 122.  This motion is fully briefed, including supplemental briefing requested and reviewed by the Court.  Opp'n, ECF No. 123; Reply, ECF No. 125; Def. Supp. Brief, ECF No. 140; Gov. Supp. Brief, ECF No. 139.  The Court held two hearings on February 28, 2025, and July 15, 2025, where it heard oral arguments from both parties.  ECF Nos. 132, 148.

For the following reasons, the Court **GRANTS** Defendant's motion.

## I.    BACKGROUND

### A.    Factual Background

Defendant is a citizen of Mexico currently residing in the United States.  *See* Mot., Ex. D, ECF No. 122-4.  He is being charged with unlawfully reentering the United States sometime after being deported to Mexico under a removal order issued in 2014 ("2014 Removal Order").  Indictment, ECF No. 1.  Defendant was also deported in 1998 and 2002, but the Court dismissed

1    the indictment as to those orders on June 26, 2019.[1]  Order of Dismissal, ECF No. 52.

2           ICE became aware of Defendant's alleged unlawful presence in the United States after he

3    was cited in Redwood City for driving without a license on July 31, 2013.  Opp'n, Ex. C, ECF No.

4    130-3.  ICE subsequently detained, interviewed, and took a sworn statement from Defendant on

5    February 13, 2014.  *Id.*  They advised Defendant of his rights, including the right to talk to an

6    attorney before any questioning, and the right to have an attorney present.  *Id.*  Defendant waived

7    his rights and spoke to the officers, admitting to entering the United States in 2002 without

8    inspection and stating that he wanted to go back to Mexico.  *Id.*  That same day, ICE issued a

9    "Notice of Intent/Decision to Reinstate Prior Order."  *Id.*  This notice indicated ICE's decision to

10   reinstate the first 1998 removal order.  *Id.*  Defendant acknowledged this document, indicated he

11   did not wish to make a statement contesting the determination, and an ICE official authorized

12   removal.  *Id.*

13          However, instead of proceeding with the intent to reinstate the prior order, the Department

14   of Homeland Security ("DHS") served Defendant a separate Notice to Appear ("NTA") the next

15   day alleging that he is subject to removal because he entered without inspection.  Mot., Ex. A,

16   ECF No. 122-1.  The NTA did not provide a date, time, or place for the removal hearing, instead

17   stating that this information was "to be set."  *Id.*  The NTA was served alongside a notification of

18   rights and request for resolution, which stated that Defendant had the right to a hearing before the

19   Immigration Judge ("IJ") and right to an attorney at no cost to the government, and that the official

20   serving notice could give a list of organizations of free or low cost attorneys.  *Id.*  In response to

21   the NTA, Defendant requested a hearing before the IJ.  *Id.*  However, under the request for

22   resolution, Defendant marked the option that he wanted to return to his home country rather than

23   request a hearing.  *Id.*

24          On February 18, 2014, the immigration court mailed Defendant a third document titled

25   "Notice of Hearing in Removal Proceedings," stating that Defendant's removal hearing was

26

27   _____

     [1] Judge Koh presided over this case prior to the case being re-assigned to the Undersigned on
     November 17, 2022.  ECF No. 82.

28   Case No.: 5:18-cr-00053-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT

United States District Court
Northern District of California

1  scheduled for February 27, 2014, in San Francisco, but it did not provide a street address for the

2  court location.  Mot., Ex. B, ECF No. 122-2.

3       The IJ held Defendant's removal hearing on February 27, 2014.  Mot., Ex. C, ECF No.

4  122-3.  Defendant was brought to the removal proceedings in custody.  *Id.*  He was not

5  represented by counsel.  *Id.*  There was a Spanish interpreter present, but the interpreter did not

6  interpret the entire proceeding.  *Id.*  The IJ informed Defendant of his right to an attorney but told

7  him he had to find the attorney himself.  *Id.*  The IJ did not advise Defendant of the right to an

8  attorney on appeal, advise Defendant of the availability of pro bono legal services, or provide

9  Defendant a list of free legal service providers, as required by 8 C.F.R. § 1240.10 and 8 U.S.C. §

10  1362.  *Id.*  During this hearing, Defendant indicated that he wanted to go back to Mexico.  *Id.*  The

11  IJ made the finding that Defendant was not eligible for voluntary removal and ordered Defendant

12  removed.  *Id.*

13       At some point thereafter, Defendant returned to the United States and pled nolo contendere

14  on various drug-related offenses in the Santa Clara Superior Court on January 8, 2016.  Opp'n, Ex.

15  D, ECF No. 130-4.  The court sentenced Defendant to six years in custody.  *Id.*  Defendant's arrest

16  in this Santa Clara case alerted ICE to Defendant's presence in the United States once more, and

17  ICE subsequently issued an arrest warrant.  *Id.*  The Government then indicted Defendant in this

18  case for unlawful reentry, relying in part[2] on the 2014 Removal Order.

19       **B.**     **Procedural Background and Evolution of Case Law**

20       This is Defendant's fourth motion to dismiss.  In addition to describing the procedural

21  history of this case, the Court will also provide a brief summary of recent Ninth Circuit and

22  Supreme Court decisions relevant to Defendant's arguments in the motion before the Court.

23            **1.**     **First Motion to Dismiss**

24       Approximately four months after Defendant's indictment, the Supreme Court issued

25  *Pereira v. Sessions*, 585 U.S. 198, 202 (2018), which held that an NTA must comply with 8

26

27  _____
   [2] The indictment also originally relied on removal orders from 1998 and 2002 prior to Judge
   Koh's order granting Defendant's motion to dismiss as to those orders.

28  Case No.: 5:18-cr-00053-EJD-1
   ORDER GRANTING MOTION TO DISMISS INDICTMENT

United States District Court
Northern District of California

1    U.S.C. § 1229(a) for purposes of the stop-time rule.  The stop-time rule applies if a noncitizen

2    seeks a form of immigration relief called "cancellation of removal."  *Id.* at 202.  Among other

3    requirements, this relief is generally available to noncitizens who have continuously resided in the

4    United States for seven or ten years, depending on the individual's status.  *Id.*  The length of

5    continuous presence is calculated from the time of entry into the United States to the date the

6    individual was served an NTA in compliance with 8 U.S.C. § 1229(a).  *Id.*  Section 1229(a)

7    provides: "In removal proceedings under section 1229a of this title, written notice . . . shall be

8    given in person to the alien . . . specifying the following: . . . The *time and place at which the*

9    *proceedings will be held*." (emphasis added).  The Ninth Circuit held that service of an NTA

10   marks the end of a noncitizen's "continuous presence" only if it includes the time and place of the

11   deportation proceedings pursuant to 8 U.S.C. § 1229(a).  Following *Pereira*, some district courts

12   granted motions to dismiss indictments for unlawful reentry when the NTA lacked the information

13   required in 8 U.S.C. § 1229(a) on the ground that the agency lacked jurisdiction to enter the order.

14   *See, e.g., United States v. Rojas Osorio,* No. 17-CR-00507-LHK, 2019 WL 235042 (N.D. Cal.

15   Jan. 16, 2019), *order vacated on reconsideration*, 381 F. Supp. 3d 1216 (N.D. Cal. 2019).

16       In reliance on *Periera*, Defendant filed his first motion to dismiss on December 5, 2018,

17   arguing that the NTA for the 2014 Removal Order did not trigger the Government's statutory

18   authority to initiate removal proceedings because it did not comply with 8 U.S.C. § 1229(a).  ECF

19   No. 13.

20       After briefing concluded, but before Judge Koh ruled on the motion, the Ninth Circuit

21   issued *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019).  The Circuit held the regulatory

22   definition of an NTA in 8 C.F.R. § 1003.18 governs jurisdiction, not the statutory definition in 8

23   U.S.C. § 1229(a).  *Id.*  The Ninth Circuit found *Pereira* distinguishable because *Pereira* examined

24   the validity of NTAs for the purposes of the stop-time rule, not for purposes of jurisdiction.  *Id.*

25       Relying on *Karingithi*, Judge Koh rejected Defendant's argument that the IJ lacked

26   jurisdiction because the NTA violated 8 U.S.C. § 1229(a) and denied Defendant's first motion to

27   dismiss on February 4, 2019.  ECF No. 23.

28   Case No.: 5:18-cr-00053-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT
                                    4

### 2.   Second Motion to Dismiss

Approximately three weeks later, Defendant filed a second motion to dismiss his indictment as to the 1998 and 2002 removal orders, which Judge Koh granted on June 26, 2019. ECF Nos. 52.  The Court found issues with the administrative removal proceedings.  Moving forward, the indictment relied only on Defendant's reentry following the 2014 Removal Order.

### 3.   Third Motion to Dismiss

On October 2, 2019, Defendant moved for dismissal pursuant to *Karingithi*.  As noted above, the Ninth Circuit there held that the definition of an NTA in 8 C.F.R. § 1003.18 governs jurisdiction, not the statutory definition in 8 U.S.C. § 1229(a).  *Karingithi*, 913 F.3d.  Accordingly, Defendant argued the IJ did not have jurisdiction to enter the 2014 Removal Order because neither the NTA nor the subsequent hearing notice included the address of the immigration court as required under the regulations.  ECF No. 59.  In response, the Government argued for the first time that the regulations did not govern subject-matter jurisdiction of the agency but were instead merely "claim-processing" rules.  ECF No. 60.

Judge Koh granted Defendant's motion to dismiss and rejected the Government's claim-processing argument.  ECF No. 63.  The court found that "[t]he requirement that an NTA include the 'address of the Immigration Court where the Service will file' the NTA, 8 C.F.R. § 1003.15(b)(6), is jurisdictional in nature."  *Id.* at 7–8 (citing *Karingithi*, 913 F.3d).  The court also found that his physical presence at the hearing could not cure the regulatory defects.

### 4.   Ninth Circuit Appeal

The Government appealed Judge Koh's order granting the third motion to dismiss.  While the Government's appeal was pending, the Ninth Circuit and Supreme Court issued three more relevant opinions.

On May 5, 2020, the Ninth Circuit issued *Aguilar Fermin v. Barr*, 958 F.3d 887, 895 (9th Cir. 2020), which held that deficient NTAs can still establish jurisdiction if cured by subsequent notices—specifically, the deficient NTA "did not deprive the immigration court of jurisdiction over [the] case" because the regulatory deficiencies were "fixed by a later hearing notice."

United States District Court
Northern District of California

1   Approximately one year later, the Supreme Court issued *Niz-Chavez v. Garland*, 593 U.S. 155,

2   158 (2021).  The Court found that, for purposes of the stop-time rule, all information required in 8

3   U.S.C. § 1229(a) must be provided in one notice—not in separate mailings over time—otherwise,

4   the agency exceeded its statutory license.  Finally, on July 11, 2022, the Ninth Circuit issued an en

5   banc decision in *United States v. Bastide-Hernandez*, 39 F.4th 1187 (9th Cir. 2022) (en banc),

6   reaffirming its prior holdings in *Karingithi* and *Aguilar Fermin* that a removal order precipitated

7   by a statutorily "defective NTA" is not void for lack of subject-matter jurisdiction.  *Id.*  Most

8   notably, the Circuit also held for the first time that the regulatory requirements are waivable

9   "claim processing" rules, not jurisdictional requirements.  *Id.*

10      On November 16, 2022, in reliance on the new decision in *Bastide-Hernandez*, the Ninth

11  Circuit reversed Judge Koh's order dismissing the indictment.  ECF No. 80.   Following denial of

12  certiorari, the Ninth Circuit remanded to this Court.  Under the new framework established by

13  these recent cases, Defendant subsequently filed the present motion to dismiss on August 30,

14  2024, attacking the 2014 Removal Order once more.

15  **II.      DISCUSSION**

16      Defendant collaterally attacks the 2014 Removal Order pursuant to 8 U.S.C. § 1326(d).

17  Defendants can challenge the validity of the removal order underlying an indictment for unlawful

18  reentry if they demonstrate three elements: (1) they exhausted any available administrative

19  remedies to seek relief against the order; (2) the deportation proceedings improperly deprived

20  them of the opportunity for judicial review; and (3) the entry of the order was fundamentally

21  unfair.  8 U.S.C. § 1326(d).  For the reasons explained below, the Court finds Defendant satisfies

22  all three elements.

23      **A.      Fundamentally Unfair**

24      The "fundamental unfairness" element in § 1326(d)(3) requires a due process violation, as

25  well as a plausible showing that the errors affected the outcome of the proceedings.  *See United*

26  *States v. Valdivias-Soto*, 112 F.4th 713, 722 (9th Cir. 2024) (citing *United States v. Alvarado-*

27  *Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)).  Defendant advances two theories to satisfy this

28  Case No.: 5:18-cr-00053-EJD-1
    ORDER GRANTING MOTION TO DISMISS INDICTMENT

requirement: (1) the underlying proceedings were fundamentally unfair because the NTA did not include the time, date, and place of the removal proceedings, therefore subject-matter jurisdiction never vested; and (2) alternatively, Defendant entered invalid waivers of the right to counsel and the right to appeal, and these due process violations prejudiced him. The Court will discuss each theory in turn.

### 1.    Subject-Matter Jurisdiction

Defendant's primary argument is that the IJ did not have statutory authority to issue the 2014 Removal Order because the NTA did not include the time, date, and place of the removal proceedings as required by 8 U.S.C. § 1229(a), and the subsequent hearing notice still did not include the address of the court where the hearing would be held.

Ninth Circuit case law is now clear that "the failure of an NTA to include time and date information does not deprive the immigration court of subject matter jurisdiction." *Bastide-Hernandez*, 39 F.4th at 1188. In *Bastide-Hernandez* and *Karingithi*, the Ninth Circuit held and reaffirmed that a removal order precipitated by a "defective NTA" under 8 U.S.C. § 1229(a) is not void for lack of subject-matter jurisdiction. *See also United States v. Davila-Chavez*, No. 5:19-CR-00181-EJD-1, 2022 WL 4292965, at *3 (N.D. Cal. Sept. 16, 2022) ("Defendant contends that the [NTA] was defective insofar as it failed to provide the time, date and place of hearing information as required by 8 U.S.C. § 1229(a)(1), and therefore subject matter never vested under § 1229(a). Defendant's argument is foreclosed by [*Bastide-Hernandez*, which held that] . . . . 'the failure of an NTA to include time and date information does not deprive the immigration court of subject matter jurisdiction.'").

Defendant offers three primary arguments as to why, despite this line of cases, the Court should find that NTAs must comport with 8 U.S.C. § 1229(a)(1) to vest subject-matter jurisdiction: (1) *Aguilar Fermin, Lopez, Pereira*, and *Niz-Chavez* support Defendant's position; (2) *Loper* abrogates *Bastide-Hernandez* and *Karingithi*; and (3) *Bastide-Hernandez* and *Karingithi* did not evaluate the overarching question of whether the Executive Branch had statutory authority.

United States District Court
Northern District of California

a.        **Ninth Circuit and Supreme Court Precedent**

Defendant cites to the Ninth Circuit's decisions in *Aguilar Fermin* and *Lopez,* and Supreme Court's decisions in *Pereira* and *Niz-Chavez*, for the proposition that an NTA must comply with 8 U.S.C. § 1229(a)(1) to vest subject-matter jurisdiction.  The Court finds Defendant's argument unpersuasive.

The Court agrees that *Aguilar Fermin* could be read to suggest that NTAs must comply with the regulation's requirements regarding time, date, and place to establish jurisdiction.  The Circuit there found "no error in the BIA's determination that the lack of time, date, and place in the NTA sent to Aguilar did not deprive the immigration court of jurisdiction over her case" because the deficiencies were "fixed by a later hearing notice."  *Aguilar Fermin*, 958 F.3d at 895.  This suggests that, had the deficiencies not been cured in a subsequent notice, the immigration court would have no jurisdiction.  The Ninth Circuit later recognized this common understanding of *Aguilar Fermin* in *Bastide-Hernandez*, where it noted:

> In the wake of *Karingithi*, some practitioners interpreted its references to "jurisdiction" as applying to the immigration court's subject matter jurisdiction, and some case law can be read to suggest that this is the correct reading. *See, e.g., Cortes-Maldonado v. Barr*, 978 F.3d 643, 646 n.2 (9th Cir. 2020); *Aguilar Fermin v. Barr*, 958 F.3d 887, 891–95 (9th Cir. 2020); *United States v. Gomez*, 499 F. Supp. 3d 680, 685–88 (N.D. Cal. 2020); *United States v. Martinez-Gonzalez*, 417 F. Supp. 3d 1349, 1351–53 (E.D. Wash. 2019), appeal voluntarily dismissed, No. 19-30252 (9th Cir. Feb. 10, 2020). To the extent that courts or practitioners have read *Karingithi* as holding that the Attorney General's regulations govern the immigration court's subject matter jurisdiction, today we clarify that this is not the law in the Ninth Circuit.

*Bastide-Hernandez*, 39 F.4th at 1193 n.7.  The Circuit then held that its reference to "jurisdiction" in these prior cases was "colloquial" and clarified that "§ 1003.14(a) is a nonjurisdictional claim-processing rule."  *Id.*

As for Defendant's citations to *Lopez, Pereira*, and *Niz-Chavez*, these decisions examine NTA requirements for the purposes of the stop-time rule in cancellation of removal proceedings and have no bearing on the court's examination of jurisdiction here.  *See Bastide-Hernandez*, 39 F.4th at 1193 n.9 ("[*Niz-Chavez*] did not concern the docketing procedure set forth in 8 C.F.R. §

Case No.: 5:18-cr-00053-EJD-1
**ORDER GRANTING MOTION TO DISMISS INDICTMENT**

1003.14(a).  Thus, while the supplement of a notice of hearing would not cure any NTA

deficiencies under § 1229(a), we continue to hold that it suffices for purposes of § 1003.14(a).");

*Karingithi*, 913 F.3d at 1161 (distinguishing *Pereira* as applying only for purposes of the stop-

time rule).

### b.    Abrogation by *Loper*

Next, Defendant argues *Bastide-Hernandez* and *Karingithi* are abrogated by *Loper* because

they "impermissibly relied on a mode of reasoning that deferred to the agency's clearly erroneous

and self-serving interpretation of the statutory scheme, and accepted the absurd claim, based on

agency deference, that the statutory and regulatory definitions of the term 'notice to appear' are

'unrelated.'"  Mot. 15.

As an initial matter, the Ninth Circuit did not apply the *Chevron* deference standard in these

cases.  *Bastide-Hernandez* does not reference any agency decision, although it references

*Karingithi*, which did cite to BIA decisions.  But in *Karingithi*, the court gave the agency

"substantial deference," as defined in *Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011),

not "*Chevron* deference."  *Karingithi*, 913 F.3d.  While *Chevron* deference applies to an agency's

interpretation of statutes, substantial deference applies to an agency's interpretation of its own

regulations and upholds the agency's interpretation "so long as the interpretation sensibly conforms

to the purpose and wording of the regulations."  *Lezama-Garcia*, 666 F.3d at 525.

However, even if the Ninth Circuit applied *Chevron* deference in these cases, the Supreme

Court in *Loper* explicitly held:

> [We] do not call into question prior cases that relied on the Chevron
> framework. The holdings of those cases that specific agency actions
> are lawful . . . are still subject to statutory stare decisis despite our
> change in interpretive methodology.  Mere reliance on *Chevron*
> cannot constitute a "special justification" for overruling such a
> holding, because to say a precedent relied on *Chevron* is, at best, "just
> an argument that the precedent was wrongly decided." That is not
> enough to justify overruling a statutory precedent.

*Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 412 (2024) (internal citations omitted).

Pursuant to the Supreme Court's directive, while the Ninth Circuit may consider revisiting

its line of cases relying on BIA decisions, it is not for this Court to decide whether *Loper* abrogated

1    *Bastide-Hernandez* and *Karingithi*.[3]

2            **c.**      **Matter of First Impression**

3           Finally, Defendant argues that "[a]fter *Loper Bright*, the statutory issue presented here is a

4    question of first impression in the Ninth Circuit" because "neither *Karingithi* nor *Bastide-*

5    *Hernandez* identified any statutory authority for the Executive Branch's conduct, but instead

6    resolved subsidiary issues regarding the regulatory authority of the government's administrative

7    agencies." Mot. 14–15. To the extent that Defendant's theory rests on the impact of *Loper Bright*

8    to Ninth Circuit precedent, the Court rejects Defendant's argument for the reasons discussed

9    above.[4]

10           **2.**      **Invalid Waivers**

11          As an alternative argument, Defendant contends that his waiver of the right to counsel and

12   an appeal was invalid because the IJ failed to provide him the advisements required in 8 C.F.R. §

13   1240.10 and 8 U.S.C. § 1362, and the IJ's failure prejudiced his case.

14          Among other requirements, IJs "shall" provide respondents the following advisements

15   during removal proceedings:

16            (1) Advise the respondent of his or her right to representation, at no
17            expense to the government, by counsel of his or her own choice
              authorized to practice in the proceedings and require the respondent
18            to state then and there whether he or she desires representation;
              (2) Advise the respondent of the availability of pro bono legal services
19            for the immigration court location at which the hearing will take
              place, and ascertain that the respondent has received a list of such pro
20            bono legal service providers.
              (3) Ascertain that the respondent has received a copy of appeal rights.

21   8 C.F.R. § 1240.10; *see also* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration

22   judge and in any appeal proceedings before the Attorney General from any such removal

23   proceedings, the person concerned shall have the privilege of being represented (at no expense to

24

---

25   [3] Defendant's remaining arguments essentially contend that *Karingithi* was wrongly decided. This
26   is also not an issue appropriate for this Court to decide.
     [4] To the extent that Defendant contends he raises an argument not at issue in *Karingithi* and
27   *Bastide-Hernandez*, the Court need not resolve this issue here, as it finds Defendant's alternative
     theory regarding invalid waivers persuasive for the reasons discussed below.

28   Case No.: 5:18-cr-00053-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT
     10

United States District Court
Northern District of California

the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.");

*United States v. Valdivias-Soto*, 112 F.4th 713, 728–29 (9th Cir. 2024).  Courts have found that the failure to comply with these requirements could render any waiver to counsel or the right to appeal invalid.  *See Valdivias-Soto*, 112 F.4th at 723.

Courts "indulge every reasonable presumption against waiver, and do not presume acquiescence in the loss of fundamental rights," especially where an uncounseled respondent relied on an interpreter to understand the rights he purportedly waived.  *United States v. Ramos*, 623 F.3d 672, 680–81 (9th Cir. 2010) (internal quotation marks and citation omitted).  "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," and must "prove by 'clear and convincing evidence' that the alien received 'adequate advisement of the consequences of his waiver of appeal.'"  *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021) (quoting *United States v. Ramos*, 623 F.3d 672, 680–81 (9th Cir. 2010)).

The Court will separately examine Defendant's arguments that: (1) the IJ failed to provide the required advisements in violation of the due process clause, and (2) the IJ's failure resulted in resulted in prejudice.

### a.    Failure to Provide Required Advisements

Defendant argues he did not enter valid waivers of his right to counsel and right to an appeal because the IJ failed to provide two required advisements.  First, while the IJ stated that Defendant had "been given the legal services list," this statement was not translated.  During the translated portion of the hearing, the IJ said nothing about the right to pro bono counsel or the legal services list.  Second, while the IJ informed Defendant of his right to counsel, the IJ did not inform him of his right to counsel on appeal.

The Government does not dispute this representation of the record but argues in part that the IJ nevertheless satisfied his obligations because he at least referenced the right to counsel during the hearing.  However, the general reference to the right to counsel is insufficient to fulfill the IJ's regulatory and statutory duties to ensure respondents are fully informed of their rights.  *See*

United States District Court
Northern District of California

1   *Valdivias-Soto*, 112 F.4th at 723.  The Government also notes that Defendant was previously

2   provided a list of pro bono counsel and advised of his rights prior to the hearing, but fails to explain

3   what relevance, if any, information given prior to the hearing has on the advisements required in 8

4   C.F.R. § 1240.10.  The regulations are clear that the IJ "shall" provide this information in the

5   hearing, with no indication that information received from other sources at other times satisfies

6   these requirements.

7          Because the IJ failed to advise Defendant of his right to counsel on appeal and his right to

8   seek pro bono counsel from a list of legal services, the Court finds Defendant's waiver of these

9   rights was not knowing and voluntary.  *See id.*

10                                    **b.    Prejudice**

11          The Ninth Circuit recently reiterated that "[a] defendant need not conclusively demonstrate

12  that he or she would have received relief to show prejudice, but must show only that there were

13  plausible grounds for relief."  *Valdivias-Soto*, 112 F.4th at 722 n.6 (internal quotation marks

14  omitted).  Defendant argues the IJ's failure to advise him of his rights prejudiced him because there

15  was a plausible chance that he could have had the case terminated due to the NTA deficiencies if he

16  had pro bono counsel.

17          This raises two questions that the Court discussed at length with the parties during the

18  second hearing: (1) what is the definition of "relief," and (2) what "plausible grounds" for relief

19  were available to Defendant?[5]  The Court will address each in turn.

20                                 **i.    Definition of Relief**

21          The parties dispute the definition of "relief."  The Government contends that "relief"

22  requires a defendant to show that he is not deportable.  Defendant argues[6] that "relief" includes the

---

[5] The Court also queried during the second hearing whether prejudice is presumed here or whether
Defendant is required to show actual prejudice, and the parties agreed that actual prejudice is
required here pursuant to *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994) and
*United States v. Proa-Tovar*, 975 F.2d 592 (9th Cir. 1992).  Although, as discussed in this section,
the parties still dispute what constitutes actual prejudice.
[6] Defendant also argues the order is invalid because the IJ did not have jurisdiction, which the
Court rejected for the reasons stated above.

Case No.: 5:18-cr-00053-EJD-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT
12

dismissal without prejudice or termination of the *specific* removal order forming the basis of the indictment, regardless of whether the defendant would be otherwise deportable in a new proceeding.

The Court finds Defendant's position persuasive.  In *United States v. Ochoa-Oregel*, 904 F.3d 682, 685–86 (9th Cir. 2018), the Ninth Circuit found that the defendant established prejudice by showing that he could lawfully remain in the United States as a lawful permanent resident. However, the Circuit also importantly noted: "[E]ven if the government might have been able to remove him on other grounds through a formal removal proceeding, his removal on illegitimate grounds is enough to show prejudice." *Ochoa-Oregel*, 904 F.3d at 685–86.  Though the Court recognizes the distinctions highlighted by the Government—unlike in *Ochoa-Oregel*, Defendant is not a legal permanent resident, and he does not contest the validity of the IJ's characterizations of his convictions as bases for removal—the Court finds this language still suggests that the events occurring after a deportation proceeding is terminated or dismissed are irrelevant to whether the defendant achieved "relief" for purposes of a collateral attack under § 1326(d).

The language of § 1326 also supports Defendant's position.  Section 1326(d) requires the Court to analyze the "validity" of the order that was issued, based on an examination of "the deportation proceedings at which *the order* was issued," the possibility of "relief against *the order*," and whether "the entry of *the order* was fundamentally unfair."  8 U.S.C. § 1326(d)(1), (2), (3) (emphasis added).  This language suggests that "relief" is not limited to outcomes that could allow the defendant to remain legally in the United States, but instead requires only the termination or dismissal of the *specific removal order* underlying the indictment.

The Court finds the Government's arguments to the contrary unpersuasive.  The Government cites to *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000), to support its argument that, "[w]here deportation is a foregone conclusion, a defendant cannot demonstrate that he had plausible grounds for relief from deportation."  Gov. Supp. Brief 2. However, *Garcia-Martinez* held that, despite the issue with an adjudicator's alleged bias, the defendant there would have still been removed in *those specific* proceedings under an unbiased

adjudicator. *Garcia-Martinez*, 228 F.3d at 963. Whereas here, Defendant would not have been removeable in the specific proceedings underlying this indictment if those proceedings were terminated. The Government's citation to Ninth Circuit decisions finding prejudice where the defendant was eligible for lawful status are similarly unavailing. *E.g.*, *Valdivias-Soto*, 112 F.4th at 725 (noting the defendant's undisputed eligibility for U-visa). Though Ninth Circuit precedent is clear that eligibility for lawful status constitutes "relief," the Government has yet to cite any case where the Ninth Circuit has considered a defendant's deportability in future proceedings when examining "relief."

Accordingly, the Court finds "relief" includes the termination or dismissal without prejudice of the specific 2014 Removal Order underlying the § 1326 charge, irrespective of whether the Government could have deported Defendant in new proceedings.

### ii.    Plausible Grounds for Relief

The question then becomes whether Defendant had plausible grounds to terminate or dismiss his deportation proceedings based on the deficient NTA.

As the Court found above, deficient NTAs do not divest the IJ from jurisdiction. However, deficiencies in NTAs can still be attacked in immigration proceedings as a violation of the mandatory "claims-processing" rules. *See In Matter of R-T-P-*, 28 I. & N. Dec. 828 (BIA 2024); *Matter of Fernandes*, 28 I. & N. Dec. 605 (BIA 2022); *see also Suate-Orellana v. Garland*, 101 F.4th 624, 630 (9th Cir. 2024) (remanding for the BIA to consider claim of statutorily deficient NTA as violation of the "claims-processing" rule in light of recent decisions in *Niz-Chavez*, *Bastide-Hernandez*, and *Matter of Fernandes*). For example, respondents in deportation proceedings can affirmatively file a motion to terminate proceedings based on deficiencies in the NTA. *See In Matter of R-T-P-*, 28 I. & N. Dec. 828. Such a motion does not automatically trigger termination, and DHS may make a separate motion to amend the NTA rather than terminate the case. *See Matter of Fernandes*, 28 I. & N. Dec. 605. However, "DHS may [also] decide it is best to request dismissal without prejudice and file a new notice to appear." *Id.* (citing 8 C.F.R. §§ 239.2(a), (c), 1239.2(a), (c)).

1    Here, the Government does not dispute that the NTA failed to comply with the applicable

2 regulations.  Even if the subsequent notice cured some deficiencies, it is undisputed that no notice

3 included the address of the court where the hearing was held.[7]  As such, if represented by counsel

4 before the IJ or on counseled appeal before the BIA, Defendant had plausible grounds to

5 affirmatively move for termination.[8]

6    Therefore, the Court finds Defendant has established prejudice resulting from the IJ's

7 failure to provide the required advisements.  Accordingly, the Court finds the fundamental

8 unfairness prong satisfied.

9         **B.    Exhaustion and Judicial Review Elements**

10    As previously noted, a defendant must exhaust "available" administrative remedies and

11 show deprivation of the opportunity for judicial review before collaterally attacking a removal

12 order under § 1326.  8 U.S.C. §§ 1326(d)(1)–(2); *United States v. Palomar-Santiago*, 593 U.S.

13 321, 327 (2021) (describing exhaustion of administrative remedies as "appealing the immigration

14 judge's decision to the BIA" and deprivation of the opportunity for judicial review as "filing a

15 petition for review of a BIA decision with a Federal Court of Appeals").

16    Defendant did not appeal the 2014 Removal Order.  However, the Court finds the IJ failed

17 to provide the required advisements regarding the "rules . . . of the process" for obtaining an

18 administrative remedy—the rules being that he had the right to an attorney represent him in an

19 appeal and could contact attorneys offering free legal services from the list. *Valdivias-Soto*, 2024

20 WL 3734421, at *13; *United States v. Nunez*, 140 F.4th 1157, 1164 (9th Cir. 2025) (noting that

21 *Valdivias-Soto* stands for the "limited proposition that 'administrative remedies are not

22

23 ───────────────

24 [7] The Government insinuates that this information was not required because there are only two immigration courts in San Francisco, so Defendant should have been able to deduce from the zip code on the notice which court would hear his case.  This argument lacks any support from the statute, regulations, or case law.

25

26 [8] What the Government may or may not have done if Defendant's immigration proceedings were terminated, or if Defendant filed a motion to terminate the proceedings, is speculative and untethered to the issue here.  *See Ochoa-Oregel*, 904 F.3d at 685–86 ("[E]ven if the government might have been able to remove him on other grounds through a formal removal proceeding, his removal on illegitimate grounds is enough to show prejudice.").

27

28 Case No.: 5:18-cr-00053-EJD-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT

15

United States District Court
Northern District of California

"available"' for the purposes of § 1326(d)(1) only 'if the IJ "misled" the defendant "as to the existence or rules of the . . . process" for obtaining them.'"). Therefore, there was no remedy "available."[9] *Id.* Further, the Court finds Defendant—like other noncitizens "who are unable to appeal their removal order because they entered a waiver of their right to appeal that was not considered and intelligent"—was "improperly deprived of judicial review." *Valdivias-Soto*, 112 F.4th at 733 (citing *Mendoza-Lopez*, 481 U.S. at 840).

Accordingly, the Court finds the remaining two elements satisfied.

## III.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: September 10, 2025

EDWARD J. DAVILA
United States District Judge

---

[9] The Government did not specifically address whether the IJ's failure to provide the required advisements renders administrative remedies "unavailable."

Case No.: 5:18-cr-00053-EJD-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT
16